621 So.2d 451 (1993)
Pansy O. CARLTON, Appellant,
v.
WAL-MART STORES, INC., d/b/a Sam's Wholesale Club, Appellee.
No. 92-00122.
District Court of Appeal of Florida, First District.
March 16, 1993.
*452 James L. Padgett, Crescent City, for appellant.
Jeffrey P. Gill of Bridgers, Gill & Holman, Pensacola, for appellee.
WEBSTER, Judge.
Appellant seeks review of an order dismissing her civil action "without prejudice" because she failed to serve appellee within 120 days after she had filed her complaint, as required by Rule 1.070(j), Florida Rules of Civil Procedure. We conclude that we have jurisdiction, and that the trial court abused its discretion when it dismissed the action. Therefore, we reverse.
We address first an issue raised by us  whether we have jurisdiction to consider the merits of this appeal. Because the action was dismissed "without prejudice," we questioned whether the order is sufficiently "final" to confer jurisdiction pursuant to Rule 9.030(b)(1)(A), Florida Rules of Appellate Procedure. (The parties concede that the order is not one of the "non-final" orders which may be reviewed pursuant to Rule 9.130.)
Rule 1.070(j) reads:
If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading and the party on whose behalf service is required does not show good cause why service was not made within that time, the action shall be dismissed without prejudice or that defendant dropped as a party on the court's own initiative after notice or on motion.
(Emphasis added.) Consistent with the emphasized portion of the Rule, the trial court's order reads: "ADJUDGED that this cause be and the same is hereby dismissed without prejudice."
"The test to determine whether an order is final or interlocutory in nature is whether the case is disposed of by the order and whether a question remains open for judicial determination. In other words, a final decree marks the end of judicial labor." Prime Orlando Properties, Inc. v. Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes, 502 So.2d 456, 459 (Fla. 1st DCA 1986). Accord S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla. 1974); Kippy Corp. v. Colburn, 177 So.2d 193 (Fla. 1965); Chipola Nurseries, Inc. v. Division of Administration, State Department of Transportation, 335 So.2d 617 (Fla. 1st DCA 1976). We believe that the order under consideration satisfies this test. Clearly, the intent of the order is to bring to an end the judicial labor in the action. Equally clearly, the order has that effect. While the dismissal is "without prejudice," it is clear that it is "without prejudice" to file another, separate, action, rather than "without prejudice" to file an amended complaint in the first action. We believe that, because the dismissal ends the judicial labor in the first action, the dismissal is sufficiently "final" to permit an appeal. Compare Gifford v. Bruckner, 565 So.2d 887 (Fla. 2d DCA 1990) (order dismissing action "without prejudice" is a final order when it is clear that the order was intended to be "without prejudice" to file another action, rather than to amend the complaint in the first action), with Augustin v. Blount, Inc., 573 So.2d 104 (Fla. 1st DCA 1991) ("final order" dismissing claim "without prejudice" is not final for appellate purposes when it is clear that the order was intended to be "without prejudice" to amend). Moreover, had we reached the conclusion that the order was not sufficiently final to permit an appeal, we would, nevertheless, have reached the merits by treating the notice of appeal as a petition for a writ of certiorari. Fla.R.App.P. 9.030(b)(2)(A). Accordingly, we conclude that we have jurisdiction.
On the merits, the record reflects the following. On March 15, 1990, appellant filed her complaint, alleging that she had been injured on March 22, 1986, when she slipped and fell, as a result of appellee's negligence. Appellee was not served until January 7, 1991. On January 28, 1991, appellee filed an answer and affirmative defenses. One of the affirmative defenses, *453 liberally read, may be viewed as asserting that appellant had failed timely to serve appellee. Both parties then engaged in discovery for several months. On September 5, 1991, appellee filed a motion for summary judgment. That motion asserts that appellant had failed to serve the initial process and pleading within 120 days after the complaint had been filed, as required by Rule 1.070(j); that appellant had failed to show "good cause" why service had not timely been made; and that "[t]he 120 day time period for service ... lapsed after the running of the statute of limitations on March 21, 1990, and therefore this action is barred."
On the same day that it filed its motion for summary judgment, appellee also filed an affidavit in support of that motion. John D. Wilson, the affiant, swore that during 1989 and 1990, he had been the claims supervisor responsible for handling appellant's claim. He swore also that he had "had numerous conversations and communications with the attorney for [appellant]"; that, "[o]n April 11, 1990, [he] received a letter from the [appellant's] attorney, enclosing a copy of a complaint [but] [t]here was no indication in the letter or on the complaint that the complaint had been filed or if so, when it was filed"; and that he had "no notations in [his] record nor independent recollection of any extension of the time limitation for service of process." (The letter referred to by Wilson is not attached to his affidavit.)
In opposition to the motion for summary judgment, appellant filed the affidavit of her attorney. The attorney attached to the affidavit a letter from him to Wilson dated April 11, 1990, which the attorney swore was the letter referred to in Wilson's affidavit. That letter reflects that the attorney was sending Wilson several medical records relating to appellant's injury, in response to the request of one of Wilson's fellow employees; and suggests that settlement discussions had been ongoing for several months. The letter contains the following:
Also enclosed is a copy of the Complaint filed in this case to toll the statute of limitations. Inasmuch as we are trying to settle this case at this point, I will take no further action in the lawsuit, including service of process, until such time as all reasonable settlement opportunities have been explored.
Please let me hear from you at your earliest possible convenience.
In addition, the letter bears the following handwritten postscript:
P.S. The decision not to serve your insured is an accomodation [sic] to you and to them. If this approach is not agreeable to you and them please advise immediately.
Appellant's attorney's affidavit then recites:
Neither John D. Wilson, nor any other representative of [Wilson's employer] ever indicated their disagreement to this approach to resolving the law suit [i.e., that contained in the letter of April 11, 1990], despite several communications with [Wilson's employer] subsequent to the receipt of the subject letter of April 11, 1990.
There is nothing in the record to suggest that appellee challenged either the authenticity of the letter attached to the affidavit of appellant's attorney or appellant's attorney's representations regarding the lack of any response indicating that the approach he had proposed was unacceptable.
The trial court treated appellee's motion for summary judgment as a motion to dismiss for failure to comply with Rule 1.070(j). Its order recites, without explaining the reasons for the conclusion, that appellant had failed to demonstrate "good cause" for her failure timely to serve appellee. Accordingly, it dismissed the action "without prejudice," pursuant to Rule 1.070(j). On appeal, appellant argues that the trial court erred when it concluded that she had failed to establish "good cause" for her failure timely to serve appellee; and that, therefore, this court should reverse. In response, appellee argues that appellant has failed to demonstrate that the trial court abused its discretion when it dismissed the action and that, therefore, this court should affirm.
*454 Our first task is to determine what is the proper standard of review. We agree with appellee that the propriety of the trial court's dismissal must be assessed according to the abuse of discretion standard. See Morales v. Sperry Rand Corp., 601 So.2d 538, 540 (Fla. 1992) ("the trial judge has broad discretion in declining to dismiss an action if reasonable cause for the failure to effect timely service is documented"). Accord Greco v. Pedersen, 583 So.2d 783 (Fla. 2d DCA 1991); Hernandez v. Page, 580 So.2d 793 (Fla. 3d DCA 1991). Our supreme court has established the following test for use in determining whether the trial court has abused its discretion: "If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980).
Next, we must determine the intended meaning of the words "good cause," as used in Rule 1.070(j). Those words are not defined in either the Rule or the Committee Notes. Finding that no Florida court had yet defined "good cause" as used in the Rule, the Third District, in Hernandez, 580 So.2d at 795, adopted the following definition applied to the same words used in Rule 4(j) of the Federal Rules of Civil Procedure, the Rule after which Rule 1.070(j) is patterned:
Without attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified" is normally required.
Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir.1985) (citation omitted). In Morales, our supreme court appears to have recognized, at least tacitly, the relevance of federal decisions interpreting Rule 4(j) to the interpretation of Rule 1.070(j). We conclude that the working definition of "good cause" set forth in Winters is appropriate for those words as used in Rule 1.070(j), as well. However, we note the cogent admonition of the leading commentators on the Federal Rules:
In determining what is and what is not good cause, the courts will be forced to balance the clear intent of Rule 4(j) and the desire to provide litigants their day in court. A timely service of process and a just adjudication on the merits of an action are not inconsistent, but over-emphasis on either could lead to undesired consequences. If good cause is measured too restrictively, then too many good faith plaintiffs may be treated harshly. If good cause extensions are given too freely, then the risk is the emasculation of Rule 4(j). It will take some years of case law development to determine the meaning of "good cause," and it can only be hoped that a desirable equilibrium balancing the need for speedy process and the ideal of just adjudication will be struck by the courts.
4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1137, at 391-92 (1987).
Applying the Winters definition of "good cause" to the showing made by appellant in the trial court, we do not believe that reasonable men could differ on the issue of whether appellant had established "good cause" for not timely serving appellee. On the contrary, we believe that the only reasonable conclusion to be drawn from the record before us is that appellant did demonstrate "good cause" for her failure timely to serve appellee. Accordingly, we conclude that the trial court abused its discretion in reaching the opposite conclusion.
On the record before us, it is undisputed that appellant's attorney had been involved in settlement discussions with representatives of the entity responsible for handling claims against appellee for several months before the complaint was filed. Shortly after the complaint had been filed, appellant's attorney sent Wilson copies of medical *455 records and a copy of the complaint, telling Wilson that the complaint had been filed "to toll the statute of limitations." However, he also told Wilson that, because settlement discussions were under way, as "an accomodation [sic]" to Wilson and appellee, he would "take no further action in the lawsuit, including service of process, until such time as all reasonable settlement opportunities ha[d] been explored" (emphasis added). Finally, he told Wilson that if his proposal was "not agreeable," Wilson should "advise immediately." Clearly, the proposal made by appellant's attorney was intended as a courtesy to appellee. Notwithstanding, nobody associated with appellee suggested to appellant's attorney that his proposed accommodation was unacceptable until appellee filed its answer, well after the statute of limitations and the time for service contemplated by Rule 1.070(j) had passed.
We find it unnecessary to discuss either the possible inferences which one might draw regarding appellee's intent from the facts as reflected in the record; or the apparent lack of candor in Wilson's affidavit. Instead, we conclude that, on the facts as reflected in the record, appellant's counsel was justified in believing that appellee had acquiesced in the proposal that appellee not be served until "all reasonable settlement opportunities ha[d] been explored." "Good cause" having been shown why service was not timely made, the trial court abused its discretion in reaching a contrary conclusion. Accordingly, we reverse the order dismissing the action, and remand for further proceedings.
REVERSED and REMANDED.
ERVIN and BOOTH, JJ., concur.