895 So.2d 1088 (2004)
William F. MURPHY, et al., Appellants,
v.
WISU PROPERTIES, LTD., et al., Appellees.
Nos. 3D03-2047, 3D03-1002, 3D03-1831.
District Court of Appeal of Florida, Third District.
November 3, 2004.
*1089 Law Offices of Murphy & O'Brien, and William F. Murphy, Miami, and Joseph R. Littman, Hollywood, and Douglas Hiller; Stephen E. Tunstall, Miami; Lance Paskewich, for appellants.
*1090 James F. Comander; Law Offices of Williams & Associates, P.A. and Thomasina H. Williams, Miami, for appellees.
Before GREEN, RAMIREZ, and SHEPHERD, JJ.
GREEN, J.
These appeals are from an order awarding attorney's fees pursuant to Section 57.105, Florida Statutes, and from an order dismissing an amended counterclaim and third-party complaint. These appeals have been consolidated for purposes of our appellate review. For the sake of clarity, however, we will separately address the issues involved in each appeal, after a recitation of the facts and somewhat intricate procedural history of this cause.

I.
On December 4, 2000, Tom Springer, Lance Paskewich, William Jakobi, and WISU Properties, LTD ("WISU"), who were each unit owners at the Village of King's Creek Condominiums Association, Inc. ("King's Creek"), filed a seven count verified complaint against King's Creek and several individuals who had served on its Board of Directors, including William Murphy. The complaint included claims against King's Creek attorney, Mark Kuperman, as well as its accountant/auditor, Kenneth Lancaster. The complaint alleged that the defendants had committed various acts of wrongdoing during a prior lawsuit that had been filed by King's Creek against Paskewich and Jakobi. The attorney who filed the complaint at issue on these appeals was Stephen E. Tunstall.
After the filing of this complaint and before the filing of any responsive pleadings, William Wood, as president of WISU, instructed Tunstall to voluntarily dismiss the defendants. Prior to the filing of this dismissal, however, Murphy served his initial answer, counterclaim and crossclaim against the plaintiffs and Wood.[1] On or about January 19, 2001, Tunstall filed with the Clerk of Court a notice of voluntary dismissal without prejudice against all of the named defendants on behalf of WISU and Lance Paskewich. This left Tom Springer and William Jakobi as the only remaining plaintiffs in the case.
Thereafter, all of the defendants, including Murphy, responded to the main complaint with motions to dismiss raising various legal and factual issues about the plaintiffs' complaint. After a hearing on these motions was conducted, the trial court entered orders on June 20, 2001, dismissing a number of claims against King's Creek and dismissing the claim against attorney Kuperman with leave to amend. On June 26, 2001, an agreed order was entered on Lancaster's motion to dismiss based upon the finding that it would be rendered moot by the plaintiffs' filing of an amended complaint.
No amended complaint, however, was ever filed and on July 13, 2003, Tunstall moved to withdraw as counsel for the plaintiffs. On August 3, 2001, plaintiff Jakobi voluntarily dismissed his claims and on August 8, 2001, the last remaining plaintiff, Tom Springer, filed his notice of voluntary dismissal.
As for Murphy's counterclaim and cross-claim, Wood filed an amended motion to dismiss that was granted without prejudice on July 25, 2001. The order of dismissal gave Murphy thirty (30) days within which to file an amended pleading. In the interim, Murphy settled with each of the individuals *1091 in the main complaint, accepting $2950.00 from Springer and Paskewich and $1166.67 from Jakobi.
Murphy then amended his answer, counterclaim and third-party claim. He did not assert any claims against the individual plaintiffs with whom he had settled. Rather, for the first time he asserted a claim against WISU for alleged malicious prosecution. He also asserted claims against Wood and Tunstall for alleged abuse of process. WISU filed a motion to dismiss Murphy's amended counterclaim and Wood filed a motion to dismiss Murphy's third-party complaint.[2]

II.
On August 17, 2001, attorney Kuperman moved for attorney's fees and costs against all of the named plaintiffs and their attorney in the main action pursuant to Section 57.105. On August 23, 2001, Lancaster similarly moved for attorney's fees and costs against the plaintiffs and their counsel. On April 17, 2002, Murphy filed an amended motion for an award of attorney's fees in the main action against WISU and its counsel, Tunstall, pursuant to Section 57.105, wherein he joined the request previously made by Kuperman and Lancaster.[3]
The trial court then conducted a non-evidentiary hearing on the issue of entitlement to fees on June 11, 2001. In an order dated July 22, 2002, the trial court granted the motions for attorney's fees filed by defendants Lancaster, Kuperman, and Murphy in the main action, and against plaintiffs Springer, Paskewich, Jakobi, and their attorney Tunstall, in equal amounts. The order made no express reference to plaintiff, WISU, but found that the three named plaintiffs knew or should have known that the claims presented in the main action were not supported by material facts or the law. The plaintiffs' respective motions for rehearing of this order were denied in orders dated August 20, 2002, and September 23, 2002.[4]
Thereafter, Kuperman, Lancaster and Murphy each filed their respective motions for determinations as to the amount of attorney's fees to which they were entitled. In Murphy's motion, he sought an order for the determination of the amount of attorney's fees due to him from plaintiffs WISU and Tunstall. In this motion, he acknowledged that he had already settled his claims with Springer, Paskewich, and Jakobi.
In response to Murphy's motion, WISU and its President, Wood, filed their opposition. Specifically, they contended, among other things, that the main action naming WISU as a plaintiff was filed by Tunstall without WISU's prior knowledge, consent or authorization and that the overwhelming majority of the requested fees and costs by the defendants were incurred after WISU had voluntarily dismissed the case. In support of its opposition to Murphy's request for fees, WISU filed the deposition testimony of its president.
*1092 Prior to the court's determination as to the amount of fees to be awarded, plaintiffs Paskewich, Springer, and Jakobi moved for correction and/or reconsideration of the trial court's March 13, 2002, order awarding attorney's fees and costs on the ground that they each had settled their claims with defendant Murphy and obtained releases from him. They pointed out that the court's order did not reflect the same. These motions for reconsideration were denied by the trial court on March 25, 2003.
Murphy himself then moved for relief from the March 13, 2003, order awarding fees pursuant to Florida Rule of Civil Procedure 1.540. In this motion, he acknowledged that he was only claiming attorney's fees from WISU, Wood, and Tunstall and not from the other plaintiffs (i.e. Paskewich, Springer, and Jakobi). He, therefore, requested the court to amend its March 13, 2003, order accordingly.[5] This motion was also denied.
After a hearing on the amount of attorney's fees and costs to be awarded, the trial court entered an order dated March 13, 2003, awarding fees and costs to defendants Lancaster, Murphy and Kuperman to be payable in equal shares by plaintiffs Springer, Paskewich and Jakobi. The court declined to assess attorney's fees and costs against WISU finding that it had voluntarily dismissed its "claims" early on in the litigation and had never given permission to be included as a plaintiff in the main action. The plaintiffs' motions for correction and reconsideration were denied on March 26, 2003.
On April 1, 2003, the trial court entered final judgment in favor of defendant Marc Kuperman and against plaintiffs Springer, Paskewich, and Jakobi in equal shares on the one hand and by their counsel, Tunstall on the other. Plaintiffs, Springer, Paskewich, and Jakobi filed a joint notice of appeal of the order awarding attorney's fees and costs. Murphy filed his notice of joinder in this appeal pursuant to Florida Rule of Appellate Procedure 9.360(a).
Meanwhile, the trial court heard Wood's motion to dismiss Murphy's amended third-party complaint, as well as WISU's motion to dismiss Murphy's amended counterclaim. The trial court granted both motions finding that Murphy had failed to state a claim against Wood for abuse of process and that Murphy had failed to serve process on WISU where WISU had voluntarily dismissed its case prior to the filing of Murphy's amended counterclaim in an order dated May 23, 2003. The trial court also reserved jurisdiction to award attorney's fees against Murphy pursuant to Section 57.105. When Murphy's motion for rehearing/reconsideration and clarification of this order was denied, he timely took the instant appeal.
On June 6, 2003, and prior to our receipt of the record on appeal, Tunstall moved the trial court pursuant to Florida Rule of Civil Procedure 1.540(b)(1), to vacate and set aside its April 1, 2003, final judgment in favor of Kuperman. By agreement of the parties, the trial court set side this judgment and reissued the identical final judgment on June 4, 2003.
Finally, the trial court entered its final judgment for fees and costs in favor of Lancaster and against Springer, Paskewich, Jakobi, and Tunstall, jointly and severally, on June 26, 2003. Tunstall then filed his notice of appeal of this judgment *1093 as well as the judgment in favor of Kuperman.

III.
In sum, on this consolidated appeal, we now review the final judgment awarding attorney's fees and costs pursuant to section 57.105 and the order dismissing the third-party claim and amended counterclaim. We note preliminarily that on this consolidated appeal, appellants Paskewich and Springer did not file briefs but moved to adopt co-appellant Tunstall's brief as their own. That motion was granted. We further note that appellants Tunstall, Springer, Jakobi, and Paskewich all voluntarily dismissed their appeals solely against appellee Kuperman. We now address the merits of each of the respective appeals.

IV. Case No. 3D03-1831
Stephen Tunstall, attorney for the plaintiffs, seeks review of the final judgment assessing attorney's fees against him in favor of appellees Kuperman and Lancaster. He argues that the judgments against him are erroneous under section 57.105 because numerous justiciable legal and factual issues were raised in the plaintiffs' underlying litigation. He also argues that the award of 57.105 fees cannot stand against him because the trial court made no finding that he had proceeded on behalf of the plaintiffs in bad faith. See Russo & Baker, P.A. v. Fernandez, 752 So.2d 716 (Fla. 3d DCA 2000). Appellants Paskewich and Springer have adopted these arguments on this appeal as their own.
We note initially that at the time the trial court assessed 57.105 fees, the individual appellants/plaintiffs had filed a four count complaint against the appellees alleging that: (1) the appellees were never properly elected as board members of King's Creek in violation of Florida Statute 720.306(7) (1999), and in violation of the Association's Articles of Incorporation and By-laws; (2) the board members had improperly used Association funds to defend named individual board members in an unrelated libel lawsuit that was not directed at King's Creek; (3) over $1,000,000 of Association funds were expended on this libel suit where the Association had suffered no damages as a result of the alleged libelous statement; and (4) board members Kuperman and Lancaster, the accountant, deliberately hid the cost of this litigation from the members of the Association. This complaint had been dismissed by the trial court with leave to amend. The individual plaintiffs subsequently elected to voluntarily dismiss this action rather than amend their complaint. Thus, it was at this preliminary pleading stage that the appellees moved for and were awarded 57.105 attorney's fees. We find that an award of attorney's fees based upon this scant record to be an abuse of discretion and therefore, reverse.
Section 57.105(1) permits an award of attorney's fees in any civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense: (a) was not supported by the material facts necessary to establish the claim or defense; or (b) would not be supported by the application of then-existing law to those material facts. This statute was enacted to "discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing the price tag of attorney's fee awards on the losing parties." Carnival Leisure Ind., Ltd. v. Holzman, 660 So.2d 410, 412 (Fla. 4th DCA 1995) (citing Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501, 505 (Fla.1982)), receded from, in part, on other grounds, Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985). See also § 57.105, Fla. Stat. (2001). In *1094 order to justify an award under section 57.105, the trial court must find the action to be frivolous or so devoid of merit both on the facts and the law as to be completely untenable. See Schwartz v. W-K Partners, 530 So.2d 456, 457 (Fla. 5th DCA 1988)("Merely losing, either on the pleadings or by summary judgment is not enough to invoke the operation of the statute.").
In the instant case, the appellants were deemed the losing parties, for purposes of fees in the underlying litigation, by virtue of the voluntary dismissals of their complaint. The law is clear, however, that the mere dismissal of a suit does not necessarily justify an attorney's fee award if the suit can be considered to have been non-frivolous at its inception.
[T]he frivolousness of a claim or a defense is to be judged and determined as of the time it is initially presented, and if it can pass muster at that point, subsequent developments which render the claim or the defense to be without justiciable issue in law or fact should not subject the losing party to attorney's fees.
Lambert v. Nelson, 573 So.2d 54, 56 (Fla. 1st DCA 1990) (quoting Schwartz v. W-K Partners, 530 So.2d at 457). See Carnival Leisure Indus., Ltd. v. Holzman, 660 So.2d at 412 ("Thus, not every litigant who voluntarily dismisses a case is subject to the sting of attorney's fees pursuant to section 57.105"); see also Schatz v. Wenaas, 510 So.2d 1125 (Fla. 2d DCA 1987) (attorney's fees award reversed in paternity action where the putative father filed third party suit against the man he alleged to be the child's father, and then dismissed that suit when blood tests subsequently revealed that the other man was not the child's father); Wall v. Dep't of Transp., 455 So.2d 1138 (Fla. 2d DCA 1984) (attorney's fee award entered after action dismissed against Sarasota County following discovery reversed because the claim was neither completely untenable or devoid of arguable substance); Stevenson v. Rutherford, 440 So.2d 28 (Fla. 4th DCA 1983) (although summary judgment was appropriately entered in favor of defendant in a defamation action after a key witness's deposition revealed that the named defendant did not make the defamatory statement the attorney's fee award was reversed because the claim did not initially appear baseless).
Since the underlying litigation in this case never reached the discovery stage for evidence of the allegations to be adduced, the trial court essentially based its award of attorney's fee on the pleadings themselves and argument of counsel. Having reviewed the allegations contained in the complaint, as well as the defensive motions filed in response thereto, we conclude that there was nothing from the face of these pleadings to compel a conclusion that this litigation was untenable or completely devoid of merit. Simply put, the record before us was not sufficiently developed for such a determination and the face of the complaint would not support a finding that the action was frivolous. See Dalia v. Duda, 576 So.2d 868, 870 (Fla. 3d DCA 1991) (award of attorney's fees reversed where no factual basis existed to base a finding of frivolousness). Moreover, we note that the trial court did not conduct an evidentiary hearing on the motion for entitlement to fees. Thus, any purported findings made by the trial court in support of such fees were not based upon substantial, competent evidence and cannot stand. See Cooke v. Custom Crete of SW Fla., Inc., 833 So.2d 315, 316 (Fla. 2d DCA 2003) ("In finding that a party is entitled to recover attorney's fees under section 57.105 must be based upon substantial, competent evidence presented at the hearing on attorney's *1095 fees or otherwise before the court and in the record") (quoting Mason v. Highlands County Bd. of County Comm'rs, 817 So.2d 922 (Fla. 2d DCA 2002)).
Thus, for the foregoing reasons, we conclude that the trial court's award of section 57.105 attorney's fees in favor of the appellees was an abuse of discretion. Accordingly, we reverse the same. In light of our holding, it is not necessary for us to address Tunstall's alternative argument.

V. Case No. 3D03-1002
Murphy seeks review of the March 13, 2003, order awarding him section 57.105 attorney's fees only against Springer, Paskewich, and Jakobi, but not against WISU and Wood. Essentially, Murphy asserts that by virtue of the trial court's earlier July 22, 2002, order awarding him attorney's fees against plaintiffs Springer, Paskewich, and Jakobi, and their attorney, in equal amounts, he was also entitled to attorney's fees against plaintiff WISU. Given our holding that section 57.105 attorney's fees were improvidently awarded in this case, we find Murphy's argument in this regard to be moot. Accordingly, we affirm this order under review.

VI. Case No. 3D03-2047
Murphy seeks review of the order dismissing his amended counterclaim against WISU for malicious prosecution and his third-party claim against Wood for abuse of process. The stated basis of the lower court's dismissal of the amended counterclaim was that Murphy filed after WISU was voluntarily dismissed from the main action and that Murphy failed to thereafter serve WISU within 120 days as prescribed by Rule 1.070(j), Fla. R. Civ. P.[6] The stated basis for the trial court's dismissal of the third-party claim was that it failed to state a cause of action for abuse of process.
Initially, we must determine whether the order dismissing the amended counterclaim for lack of service pursuant to Rule 1.070(j) and dismissing the third party complaint for failure to state a cause is a final appealable order. We conclude that it is with regards to the dismissal of the amended counterclaim for lack of service pursuant to Rule 1.070(j). Although Rule 1.070(j) permits the refiling of the dismissed suit, the net effect of a dismissal under this Rule is to preclude the aggrieved party from proceeding further by amendment in the dismissed action. See Martinez v. Collier County Pub. Schs., 804 So.2d 559, 560 (Fla. 1st DCA 2002)("Dismissal without prejudice is final if its effect is to bring an end to judicial labor"); Hollingsworth v. Brown, 788 So.2d 1078, 1079 n. 1 (Fla. 1st DCA 2001)("when the trial court dismisses an action without prejudice to amend the complaint, the order is non-final and non-appealable.... When, however, it appears that the trial court intended the plaintiff to pursue his or her claim in a different proceeding, the order is final."); Silvers v. Wal-Mart Stores, Inc., 763 So.2d 1086 (Fla. 4th DCA 1999)(fact that dismissal is not with prejudice is not determinative of whether order is final and appealable); Carnival Corp. v. Sargeant, 690 So.2d 660, 661 (Fla. 3d DCA 1997)("[A] dismissal need not be with prejudice to be a final order for appeal purposes."); Eagle *1096 v. Eagle, 632 So.2d 122 (Fla. 1st DCA 1994)("An order dismissing a case or complaint `without prejudice' is sufficiently final to permit an appeal if the case is disposed of by the order and no issues remain for judicial determination."); Carlton v. Wal-Mart Stores, Inc., 621 So.2d 451 (Fla. 1st DCA 1993)("the test to determine whether an order is final or interlocutory in nature is whether the case is disposed of by the order and whether a question remains open for judicial determination.") (quoting Prime Orlando Props., Inc. v. Dept. of Bus. Reg., Div. of Land Sales, Condos. and Mobile Stores, 502 So.2d 456, 459 (Fla. 1st DCA 1986)). We therefore address the merits of this appeal.
We conclude that the trial court erred in its determination that Murphy was required to effectuate service of process upon WISU after WISU's notice of voluntary dismissal. Although Murphy did file his amended counterclaim after WISU's notice of voluntary dismissal, the record is clear that Murphy's initial counterclaim was served upon WISU the day before WISU's voluntary dismissal was served upon Murphy. When a counterclaim has been served by a defendant prior to the service of plaintiff's notice of voluntary dismissal, the action cannot be dismissed against the defendant's objections. See Fla. R. Civ. P. 1.420(a)(2).[7] The obvious intent of this Rule is to preclude a plaintiff from unilaterally terminating litigation when the defendant countersues. See Fed. Ins. Co. v. Fatolitis, 478 So.2d 106, 109 (Fla. 2d DCA 1985). Since the court had jurisdiction over WISU when Murphy filed his initial counterclaim, it continued to have jurisdiction over WISU when the amended counterclaim was filed because the amended counterclaim would relate back to the date of service of the initial counterclaim. See Fla. R. Civ. P. 1.190(c); Wenck v. Ins. Agents Fin. Corp., 99 So.2d 883 (Fla. 3d DCA 1958) (holding that action is commenced, for purpose of statute of limitations, on the date of filing of original complaint not when complaint amended). We therefore reverse the order dismissing the amended counterclaim and remand for further proceedings.
Finally, with regards to the trial court's dismissal of the third-party complaint for abuse of process for failure to state a cause of action, we note that the order under review merely grants the motion to dismiss without actually dismissing the third-party action. For this reason, this order is a non-final order. The law is clearly established that "an order which merely grants a motion to dismiss, as contrasted with an order dismissing a complaint or an action, is not a final order." Hayward & Assocs., Inc. v. Hoffman, 793 So.2d 89, 91 (Fla. 2d DCA 2001). See also Gries Inv. Co. v. Chelton, 388 So.2d 1281, 1282 (Fla. 3d DCA 1980) ("An order granting a motion to dismiss is not final and not appealable."). For this reason, we dismiss this portion of the appeal without addressing the merits. See Boatman v. Crosby, 839 So.2d 827 (Fla. 4th DCA 2003).
Thus, for all of the foregoing reasons, the orders on review in these consolidated appeals are reversed in part, affirmed in part and dismissed in part as outlined herein.
NOTES
[1] After WISU's notice of voluntary dismissal was filed, Murphy amended his counterclaim and third party complaint.
[2] The record before us reflects that third-party defendant, Tunstall, also initially filed a motion to dismiss Murphy's initial third-party complaint. That motion was denied and Tunstall filed his answer to the same.
[3] Although this pleading was styled as an amended motion for fees, there is no record evidence that Murphy had ever previously sought fees against these defendants.
[4] Plaintiffs Paskewich, Springer, and Jakobi also moved for correction or reconsideration on the grounds that they each had settled their claims with defendant Murphy and obtained releases from him; the trial court's March 13, 2003, order awarding fees and costs did not reflect the same. These motions, however, were denied by the trial court on March 26, 2003.
[5] Plaintiff Jakobi, acting pro se thereafter, renewed his request for reconsideration of the March 13, 2003, order as well.
[6] That rule states, in pertinent part that:

If service of the initial process and initial pleading is not made upon a defendant within 120 days after the filing of the initial pleading directed to that defendant, the court... shall direct that service be effected within a specified time or shall dismiss the action without prejudice or drop that defendant as a party provided that if the plaintiff shows good cause or excusable neglect for the failure, the court shall extend the time for service for an appropriate period.
[7] Specifically, that rule provides, in pertinent part, that:

If a counterclaim has been served by a defendant prior to the service upon the defendant of the plaintiff's notice of dismissal, the action shall not be dismissed against defendant's objections unless the counterclaim can remain pending for independent adjudication by the court....