IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

WELLS FARGO BANK, N.A.,

Appellant,

v.

MICHELLE A. GIESEL, et al.,

Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-3336

Opinion filed December 31, 2014.

An appeal from the Circuit Court for Alachua County.
Mary Day Coker, Judge.

Angela L. Leiner, Douglas C. Zahm, and Douglas M. Bales, St. Petersberg, for
Appellant.

No appearance, for Appellees.

WETHERELL, J.

　　Wells Fargo Bank, N.A. (the bank) appeals the order dismissing this
foreclosure action in response to its motion to vacate the final judgment, the judicial
sale, and the certificates of sale and title.  Because dismissal was not requested by
the bank or required under the circumstances of this case, we reverse and remand for
further proceedings.

This case started out as a run-of-the-mill foreclosure action. The bank filed a complaint to foreclose the mortgage securing the promissory note executed by Appellees (the borrowers) after the borrowers failed to make the payments required by the note. After languishing for several years, the case proceeded to a non-jury trial and culminated in a final judgment of foreclosure in favor of the bank.[1] The judgment was not appealed. The bank purchased the property at the judicial sale and the trial court thereafter issued certificates of sale and title to the bank.

The case took an unusual turn when, eight months after the certificate of title was issued (and nine months after the final judgment was entered), the bank filed a motion pursuant to Florida Rule of Civil Procedure 1.540(b) to vacate the final judgment, the judicial sale, and the certificates of sale and title. The basis for the motion was that the mortgage contained an erroneous legal description that was carried into the final judgment, the notice of sale, and the certificates of sale and title. The motion explained that vacating the final judgment and the subsequent actions "is necessary to allow the [bank] to reform the Mortgage . . . and to foreclosure [sic] the Property with the correct legal description." The motion closed

---

[1] The foreclosure complaint was filed in December 2009 and only one of the three borrowers (Michelle Giesel) filed an answer. A default was entered against the other two borrowers (James and Marilyn Giesel) in February 2010. There was very little record activity in the case over the next eight months, and there was no record activity whatsoever between October 2010 and June 2012. The final judgment was entered in August 2012.

with a generic "wherefore clause" asking the court to enter an order granting the motion "and for such other the [sic] further relief that is appropriate."

The borrowers did not file a response to the motion and the trial court did not hold a hearing on the motion. The court disposed of the motion in the following order:

> ***ORDER DISMISSING CASE***, ORDER ON MOTION
> TO VACATE JUDICIAL SALE, CERTIFICATE OF
> SALE, CERTIFICATE OF TITLE, AND FINAL
> JUDGMENT OF FORECLOSURE
>
> THIS CAUSE came on for consideration of [the bank]'s Motion to Vacate Judicial Sale, Certificate of Sale, Certificate of Title and Final Judgment of Foreclosure. The Court having reviewed the court file and pleadings filed by the [bank], it is
>
> ORDERED AND ADJUDGED
>
> 1. The Foreclosure Sale held in this action is hereby vacated.
>
> 2. The Certificate of Sale is [sic] in this action is hereby vacated.
>
> 3. The Certificate of Title issued and recorded on October 3, 2012 is hereby vacated.
>
> 4. That the Final Judgment entered on August 2, 2012 is hereby vacated.
>
> **5. *This Action is Dismissed, without prejudice.***

3

The bold-italicized portions of the order were handwritten by the trial court. The remainder of the order was the typewritten proposed order submitted by the bank with its motion.

The bank timely filed a motion for rehearing challenging the sua sponte dismissal of the case. The motion explained that the bank "did not seek dismissal of the action" and pointed out that "the Court gave no findings as to why it felt the dismissal of the action was an appropriate remedy." The trial court summarily denied the motion. This appeal followed.[2]

The bank argues on appeal that it was denied due process by the trial court's sua sponte dismissal of the case. We agree. The bank did not request such relief in its motion, and contrary to the dissent's contention, the generic request for "further relief that is appropriate" in the "wherefore clause" in the bank's motion did not give the trial court authority to dismiss this action without at least affording the

_____

[2] We have jurisdiction. See Fla. R. App. P. 9.030(b)(1)(A); Wells Fargo Bank, N.A. v. Chatham, 114 So. 3d 1062, 1064 (Fla. 1st DCA 2014) ("The dismissal order is a final order for purposes of appellate review because, even though it dismissed this case 'without prejudice,' the order precluded Wells Fargo from refiling a complaint under the same case number."); Martinez v. Collier Cnty. Pub. Sch., 804 So. 2d 559, 560 (Fla. 1st DCA 2002) ("Dismissal without prejudice is final if its effect is to bring an end to judicial labor."); Carlton v. Wal-Mart Stores, Inc., 621 So. 2d 451, 452 (Fla. 1st DCA 1993) ("While the dismissal is 'without prejudice,' it is clear that it is 'without prejudice' to file another, separate, action, rather than 'without prejudice' to file an amended complaint in the first action. We believe that, because the dismissal ends the judicial labor in the first action, the dismissal is sufficiently 'final' to permit an appeal.").

4

bank notice and an opportunity to be heard on the issue.  See BAC Home Loans Servicing, Inc. v. Headley, 130 So. 3d 703, 706 (Fla. 3d DCA 2013) (rejecting "tipsy coachman" argument that judgment for defendants on their counterclaim in a foreclosure action could be affirmed based upon the "wherefore clause" in the counterclaim seeking "such other relief as the court deems just and proper under the circumstance" because that clause did not provide the lender meaningful notice that the defendants were seeking the form of relief ultimately granted by the court); and cf. Liton Lighting v. Platinum Television Grp., Inc., 2 So. 3d 366, 367 (Fla. 4th DCA 2008) ("When a trial judge sua sponte dismisses a cause of action on grounds not pleaded, the trial judge denies the parties due process because the claim is being dismissed without notice and an opportunity for the parties and counsel to be heard.") (internal quotations omitted).

Moreover, on the merits, we conclude that dismissal was not required under the circumstances of this case and, thus, the dismissal of "[t]his action" ordered by the trial court cannot be justified as "further appropriate relief" in any event.  The dissent's reliance on Lucas v. Barnett Bank of Lee County, 705 So. 2d 115 (Fla. 2d DCA 1998), and Fisher v. Villamil, 56 So. 559 (Fla. 1911), in support of the contrary conclusion is misplaced.

Lucas involved an effort to reform the legal description in a foreclosure deed in a separate proceeding after the foreclosure sale.  See 705 So. 2d at 115.  The court

5

held that the deed could not be reformed in this manner because the sale was premised upon the erroneous legal description and other potential bidders may have acted in reliance on that description. Id. at 116. The court explained that the legal description must be corrected before the foreclosure judgment and not in a subsequent separate action. Id. ("If . . . the mistaken legal description is not corrected before final judgment of foreclosure, and the mistake is carried into the advertisement for sale and the foreclosure deed, a court cannot reform the mistake in the deed and judgment; rather, the foreclosure process must begin anew."). The court explained that the proper procedure is to vacate the sale and set aside the foreclosure judgment so as to return the parties to their "original status," whereupon the bank could then seek to reform the legal description in the mortgage and foreclose based upon the revised legal description. Id. The case said nothing about dismissal of the original foreclosure case being required.

The 1911 Fisher case cited in Lucas for the proposition that "the foreclosure process must begin anew" was likewise a separate, post-sale effort to reform the legal description in a foreclosure deed. See 56 So. at 561. Fisher said nothing about the dismissal of the foreclosure case being required; it simply held that an erroneous legal description in a mortgage cannot be corrected by reforming the deed resulting from the foreclosure sale. Id. There is nothing in Fisher (or Lucas) that precludes the reformation of the mortgage from occurring in the original foreclosure

6

proceeding once the judgment and resulting certificates are set aside. Indeed, that appears to be precisely what happened in <u>Fisher</u> on remand. <u>See</u> <u>Fisher v. Villamil</u>, 62 So. 481 (Fla. 1913) (affirming decree entered on remand cancelling the deed and then reforming and foreclosing the mortgage, and rejecting argument that the "amended bill" filed on remand "ma[d]e an entirely new case").

Here, the bank was not asking the trial court to do what <u>Lucas</u> and <u>Fisher</u> prohibit: reform the legal description in the certificate of title resulting from the foreclosure sale. Instead, the bank was asking the court to do precisely what <u>Lucas</u> and <u>Fisher</u> contemplate: vacate the final judgment of foreclosure, the sale, and the certificates of sale and title, so the bank could reform the mortgage. Had the trial court simply granted the relief requested in bank's motion (without adding the dismissal language to the order), the parties would have been put back into their pre-judgment positions, whereupon the bank could have filed a motion to amend the original complaint to include a count to reform the mortgage to correct a legal description and then the case could have proceeded on the amended complaint. The borrowers would not be prejudiced by this procedure because they will have an opportunity to defend against the amended complaint (if they choose to do so[3]), and

---

[3] This seems unlikely because two of borrowers were defaulted when they did not respond to the original complaint, and none of the borrowers appealed the final judgment of foreclosure or participated in this appeal.

7

this procedure will also avoid the problems outlined by the bank in its brief that would result if it was required to initiate an entirely new case to foreclose the borrowers' mortgage.

We recognize that the bank brought these problems on itself by including an incorrect legal description in the mortgage. However, once the bank became aware of the error, it acted diligently to undo what had already been done in order to return the case to its pre-judgment posture so that it could reform the mortgage and restart the foreclosure process as contemplated by <u>Lucas</u> and <u>Fisher</u>. There is simply no reason that the bank should be required to initiate an entirely new action to achieve this result when it would have sufficed for the trial court to simply vacate the foreclosure judgment and the resulting certificates (as requested by the bank) and then allow the litigation to proceed in the existing case.

Accordingly, for the reasons stated above, we reverse the portion of the challenged order dismissing "[t]his action" and we remand for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

MAKAR, J., CONCURS; VAN NORTWICK, J., DISSENTS WITH OPINION.

VAN NORTWICK, J., dissenting.

I respectfully dissent from the reversal of the trial court's order that, *inter alia*, dismissed Wells Fargo's foreclosure action without prejudice. In my view, governing Florida case law requires affirmance.

In Lucas v. Barnett Bank of Lee County, 705 So. 2d 115, 115 (Fla. 2d DCA 1998), the Second District reviewed a final summary judgment that modified "a legal description in a mortgage, partial release of security agreement, and certificate of title," when the mortgagor had previously obtained a final judgment of foreclosure and purchased the subject property at a foreclosure sale. The appealed modified judgment sought to correct an erroneous legal description of the subject property that was utilized in the original foreclosure judgment and related documents. Id.

Of particular importance for purposes of the disposition of the case under review, the court observed:

> When a mortgage contains an incorrect legal description, a court may correct the mistake before foreclosure. If, however, the mistaken legal description is not corrected before final judgment of foreclosure, and the mistake is carried into the advertisement for sale and the foreclosure deed, a court cannot reform the mistake in the deed and judgment; rather, the foreclosure process must begin anew. Fisher v. Villamil, 62 Fla. 472, 56 So. 559 (1911). The reason behind this policy is that, if the mortgage is not reforeclosed, the purchaser would have obtained title to a property that was not properly ordered for sale, advertised, or sold. While the mortgagee who bid its mortgage at the sale might have understood exactly what property was being offered, other potential bidders at the sale might not have had the same understanding. 62 Fla. at 479, 56 So. at 561. As the Fisher court noted, the mortgage may be reformed if a sufficient showing is made, and the reformed mortgage

9

may be foreclosed. But first, the deed to the property must be canceled, and the original foreclosure judgment set aside, such that the parties are returned to their original status. 62 Fla. at 480, 56 So. at 561; cf. § 702.08, Fla. Stat. (1993).

Id. at 116. Applying the above rule, the Second District reversed the summary judgment reforming the mortgage and related documents. Id.

The majority characterizes Fisher and Lucas as requiring that the parties should be returned to their pre-judgment, post-pleading positions. Respectfully, the majority misreads these cases. In my mind, the key proposition to be gleaned from both Fisher and Lucas is that a mistake in the legal description of a foreclosed property cannot be corrected or reformed if the mistake is not corrected prior to entry of final judgment of foreclosure and that, in such a situation, "the foreclosure process must begin anew." Id. Importantly, this proscription is not limited in application to cases in which a separate proceeding seeks to reform an erroneously described property after final judgment of foreclosure. It is not apparent to me why the holding from Fisher and Lucas should not be applied where, as here, a party files a post-judgment motion in the foreclosure case seeking to correct an erroneous legal description.

Returning to the plain language from the case law, "begin anew" is commonly and reasonably understood to mean to re-start from the beginning. Because this case began with the filing of a foreclosure complaint, it seems logical that in order to "begin anew," the bank would be required to file a new complaint with a correct

10

legal description of the subject real property. Recasting the parties to the positions they occupied at any other point ignores, in my opinion, the plain language from Fisher and Lucas.

Here, Wells Fargo did not seek reformation of the incorrect legal description prior to the entry of the final judgment of foreclosure. Although by dismissing the case the trial court took action that was not specifically requested by Wells Fargo, the appealed order did grant the relief the bank requested, i.e., vacating the erroneous judgment and other papers. The trial court's *sua sponte* action, furthermore, could reasonably be interpreted as "such other the [sic] further relief that is appropriate," as requested in Wells Fargo's motion to vacate. Because the appealed order stemmed from Wells Fargo's own motion to vacate, the present case is distinguishable from cases such as BAC Home Loans Servicing, Inc. v. Headley, 130 So. 3d 703 (Fla. 3d DCA 2013), where unrequested relief was inappropriately granted against a non-pleading party.

In my view, the trial court was correct in dismissing the entire action and returning the parties "to their original status," which I perceive to be the statuses they maintained before the case was initiated, because "the legal description [did] not close, and consequently it does not describe an actual parcel of real estate." Lucas, 705 So. 2d at 115-16.

Finally, I recognize that allowing Wells Fargo to file an amended complaint with a correct legal description, as opposed to filing an entirely new complaint, would allow the bank to avoid some potential complications outlined in the answer brief. However, Wells Fargo would not be confronted with any foreclosure-related complications if it had simply used the correct legal description in its original filings. Put another way, Wells Fargo's error led to the current state of affairs, yet it now wants to be relieved of responsibility for its error. In spite of whatever complications could arise upon the filing anew of a foreclosure complaint, because the dismissal was without prejudice, the way remains open for Wells Fargo to correct the error that derailed the original foreclosure litigation.

Accordingly, I respectfully dissent.